Filed 6/24/14  P. v. Fisher CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# **COPY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C074582 |
| Plaintiff and Respondent, | (Super. Ct. No. 62112580A) |
| v. | |
| ROBERT HENRY FISHER, | |
| Defendant and Appellant. | |

A first amended information accused defendant Robert Henry Fisher of second degree burglary (count 1; Pen. Code, § 459; unless otherwise stated, statutory references that follow are to the Penal Code); attempted vehicle theft (count 2; § 664, Veh. Code, § 10851, subd. (a)); receiving stolen property (count 3; § 496, subd. (a)); possession of ammunition (count 4; § 30305, subd. (a)(1)); and bringing drugs into a jail (count 5; § 4573).  As to counts 3 and 5, the information alleged that defendant committed the

offenses while released on bail or on his own recognizance. (§ 12022.1.) As to counts 1, 2, 3, and 5, the information alleged that defendant had suffered two prior felony convictions for which he served prison terms. (§ 667.5, subd. (b).) The People moved to dismiss these allegations during trial after discovering that the certified records of defendant's convictions showed one was for a misdemeanor and the other was more than five years old. The trial court granted the motion.

A jury convicted defendant on counts 1 and 5 and found the on-bail enhancement as to count 5 true. The jury acquitted defendant on counts 2 and 3 and failed to reach a verdict on count 4, as to which the trial court declared a mistrial.

Sentenced to a term of five years eight months in county jail (§ 1170, subd. (h)), defendant contends the trial court erred prejudicially as to count 1 by failing to instruct the jury sua sponte on simple trespass (§ 602.5, subd. (a)) as a lesser included offense of burglary under the pleading test. We conclude substantial evidence did not warrant such instruction and affirm the judgment.

FACTS AND PROCEEDINGS

Count 1 was pleaded in the first amended information as follows: "On or about March 10, 2012, in the County of Placer, the crime of BURGLARY of UNINHABITED DWELLING, in violation of Penal Code section 459, a felony, was committed by [defendant], who did unlawfully enter 43955 Highway 20 with the intent to commit larceny and any felony."

Section 602.5, entitled "Unauthorized Entry of Dwelling" provides in subdivision (a) that: "Every person . . . who enters or remains in any noncommercial dwelling house, apartment, or other residential place without consent of the owner, his or her agent, or the person in lawful possession thereof, is guilty of a misdemeanor." This crime is commonly known as simple trespass.

The evidence at trial showed the following as to count 1:

2

Derrick McDade owns a 20-acre property at 43955 State Highway 20 in Emigrant Gap in the Sierra Nevada mountains, about 2.2 miles from Interstate 80. There is a four-story, 10,000-square-foot log cabin on the property built by McDade's father, but left unfinished at his death in June 2010. The cabin is 60 or 70 yards from Highway 20 and can be seen from the road. It was "[a]bout three-quarters done," but lacked a door, and the bottom story did not have a floor or windows installed. There is also a mobile home on the property, which McDade's father had planned to remove when the cabin was finished. McDade did not live on the property, but normally visited it every week.

McDade's father was a "hoarder." He stored many large objects in the cabin, including boats, canoes, a hot tub, "big commercial batteries," snowmobiles, a snowblower, chainsaws, a bandsaw, and a sandblaster.

On the evening of March 9, 2012, with a lot of snow on the ground, McDade went to the property and noticed that some of his father's canoes and boats, loaded with other items from the cabin, were on the ground facing toward the back of the property. He saw tracks going in that direction, ropes, and a sled with a winch on it. McDade called the Placer County Sheriff's Department, but since it was late and there was no four-wheel-drive vehicle available to go onto the property, he agreed to have a sheriff's deputy come to the property the next morning.

On the morning of March 10, 2012, McDade met with Placer County Sheriff's deputies, including Deputy Greg McKenzie. The deputies approached the cabin while McDade waited by the road. McDade saw a person come out of the cabin and run through the snow.

Reserve Sheriff's Deputy Edward Donnelly noticed a lot of tire tracks in front of the cabin and a lot of foot tracks in and out of it. The snow was so deep that the deputies had trouble approaching the front of the cabin. When they got to the cabin, they investigated the cabin and the adjacent trailer, but found no one inside either one.

3

As Deputy Donnelly turned to the back of the cabin, where the tracks had been seen, he saw a person later identified as defendant standing just outside the rear doorway, 10 or 15 feet in front of the aluminum boat placed outside the cabin. Donnelly and Deputy McKenzie yelled at the person to show his hands and get on the ground, but he did not respond. McKenzie tackled him and brought him down. Donnelly noticed that defendant's pants were wet and he was wearing tennis shoes, inappropriate clothing to be "hiking around like that" with such deep snow on the ground.

According to Deputy Donnelly, defendant gave the officers his first name and said he was "just walking through." The officers detained and eventually arrested defendant.

It appeared to Deputy Donnelly from the signs of foot traffic back and forth through the snow in the direction of Lake Spalding that a number of persons had used that pathway. With the help of air support, the officers located two trucks a quarter of a mile from the cabin; one was a gold GMC truck registered to defendant and another person, and the other was a red Toyota Tacoma registered to Scott Fischer, named as a codefendant but not tried in this case. The GMC truck had a bent front license plate and a rear license plate partially obscured with black tape. The trucks were parked next to a boat and a canoe full of personal property.

Officers found a winch approximately 20 feet from the trucks. Its cable was pointed toward the cabin and was tied around a tree. Another cable ran from the winch to a pulley system that enabled the pulling of the boat and the canoe taken from the cabin across the snow; this cable was attached to the canoe. A cable was attached to the boat, from which drag marks extended across the ground.

McDade identified the following items that had been removed from the cabin or elsewhere on the property: a hot tub, two snowmobiles, antique snowshoes, a chainsaw blade sharpener, a track snowblower, Craftsman tools, chainsaws, ballistic helmets, a bandsaw, and a sander or brake equipment cleaner.

4

Defendant testified that he went to the property in the early morning of March 10, 2012, because Scott Fischer or someone calling from Fischer's phone asked for help getting their truck out of the snow "on Spalding Lake." Defendant arrived at Spalding Lake Road with his dog in his truck. Martin Nederhus, the other person defendant had come to rescue, told him to pull over and park beside Fischer and Nederhus's truck, which did not look stuck to defendant. It was around 5:00 or 6:00 a.m., just starting to get light outside, and defendant had not slept much the night before. After he parked, he fell asleep. When he woke up again, the sun was up; he guessed it was around 9:00 a.m. He let his dog out to run around in the snow, then put the dog back in the truck. He got ready to drive away because he had a load of wood in his truck that he needed to deliver, but decided not to leave because his friends might still need help. At some point he saw "stuff" scattered on the ground and followed the trail, looking for Nederhus, who had disappeared. When defendant rounded a corner, an officer yelled at him to get down or turn around, tackled him, knocked him down in the snow, and handcuffed him. Defendant might have told the police he was "just walking through," but he did not remember.

Defendant never went inside any building on the property on March 10, 2012. He did not even know there was a house on the property. He did not remember ever seeing the winch found by the officers and did not know whose it was.

DISCUSSION

Defendant contends the trial court should have instructed the jury sua sponte on simple trespass as a lesser included offense on count 1, and the court's failure to do so violated defendant's federal constitutional right to due process.

The trial court has a duty to instruct the jury sua sponte on lesser included offenses if, and only if, substantial evidence exists that the defendant committed the lesser offense

5

but not the greater. (*People v. Blair* (2005) 36 Cal.4th 686, 745; *People v. Breverman* (1998) 19 Cal.4th 142, 162.)

Defendant correctly acknowledges that simple trespass is not a lesser included offense of burglary under the elements test because burglary, unlike trespass, can be committed by one who has permission to enter a dwelling. (*People v. Birks* (1998) 19 Cal.4th 108, 118, fn. 8; *People v. Lohbauer* (1981) 29 Cal.3d 364, 369.) Instead, trespass is a lesser *related* offense of burglary, on which the trial court has no duty to instruct the jury. (*People v. Foster* (2010) 50 Cal.4th 1301, 1343-1344.)

Defendant asserts, however, that trespass is a lesser included offense of burglary under the accusatory pleading test if the charging allegations aver a form of burglary which comprises the elements of trespass, including entry without the owner's consent. (See *People v. Waidla* (2000) 22 Cal.4th 690, 733-734; *People v. Sakarias* (2000) 22 Cal.4th 596, 622, fn. 4; *People v. Wetmore* (1978) 22 Cal.3d 318, 327, fn. 8.) Assuming for argument's sake that this legal proposition is correct, and further assuming that count 1 as pleaded alleged all the elements of trespass, defendant was not entitled to an instruction on trespass because there was no substantial evidence he committed that offense rather than burglary.

According to the prosecution's evidence, defendant entered the cabin located at 43955 State Highway 20 with the intent to take part in the theft of items stored inside. According to defendant, he never entered the cabin; he entered only the surrounding land. In other words, defendant denied the key allegation of count 1 that he entered an "uninhabited dwelling" at 43955 State Highway 20. Thus, defendant's testimony was not evidence that he entered or remained in a "noncommercial dwelling house, apartment, or other residential place" without the owner's consent which would have been required for simple trespass here. (§ 602.5, subd. (a).) And there was no other evidence from which the jury could have concluded that defendant entered the cabin unlawfully but did not intend to commit any other crime inside.

6

Because defendant was not entitled to instruction on trespass as a lesser included offense, we reject his contention that the omission of this instruction violated his federal constitutional right to due process.

DISPOSITION

The judgment is affirmed.


      HULL      , Acting P. J.


We concur:


      MURRAY      , J.


      HOCH      , J.